**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0656n.06

Case No. 19-2113

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 17, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| LEVAR LEMONT ELLIOTT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: DAUGHTREY, DONALD, and READLER, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Levar Lemont Elliott pleaded guilty to one gun-possession count in 2019. At sentencing, the government argued that Elliott's Guidelines range was 108 to 120 months' imprisonment because his prior convictions subjected him to an elevated base-offense level under § 2K2.1(a)(1) of the United States Sentencing Guidelines. Elliott contended that his proper Guidelines range was 57 to 71 months' imprisonment because his prior convictions did not qualify as either a "controlled substance offense" or a "crime of violence," and therefore, a base-offense level enhancement was not warranted. The district court agreed with the government and sentenced Elliott to 108 months' imprisonment. For the reasons set forth below, we AFFIRM.

**I.**

In 2019, Levar Lemont Elliott pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). His initial sentencing Guidelines range was 57 to 71 months' imprisonment. Under United States Sentencing Guidelines § 2K2.1(a)(1), Elliott was eligible to have his sentencing base-offense level amended upwards if his prior convictions for the delivery/manufacture of less than 50 grams of cocaine, M.C.L. § 333.7401(2)(a)(iv), and third-degree criminal sexual conduct, M.C.L. § 750.520d(1)(b), were respectively deemed a "controlled substance offense" and a "crime of violence." Such an enhancement would increase his range to 108 to 120 months' imprisonment. The district court determined that M.C.L. § 333.7401(2)(a)(iv) qualified as a "controlled substance offense" and found M.C.L. § 750.520d(1)(b) to be a "crime of violence." Consequently, the district court sentenced Elliott to 108 months' imprisonment.[1]

**II.**

On appeal, Elliott relies on our decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), to argue that his prior convictions do not qualify as either a "controlled substance offense" or a "crime of violence." "Whether a prior conviction counts as a predicate offense under the Guidelines is a question of law subject to de novo review." *Id.* at 384 (citing *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009)).

When deciding how to properly classify Elliott's prior convictions under the Guidelines, we employ the "categorical approach." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). First, we decide what conduct is criminalized under the Guidelines' definitions. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020). Then we look to the *least serious of the acts criminalized* by

---

[1] With a total offense level of 29 and a criminal history category of III, Elliott was eligible for a sentence of 108 to 135 months' imprisonment since the district court found that his conduct fell under U.S.S.G. § 2K2.1(a)(1), but his Guidelines range was reduced to 108 to 120 months' imprisonment because the statutory maximum for the § 922(g)(1) offense was 120 months' imprisonment. *See* U.S.S.G. § 5G1.1(c)(1).

the elements of the state statutes that Elliott violated, not his actual conduct. *Havis*, 927 F.3d at 384-85. If the least culpable conduct of each state law falls within the Guidelines' definitions of "controlled substance offense" and "crime of violence," then the statutes would categorically qualify as a controlled substance offense and a crime of violence. *Id.* at 385; *United States v. Raymore*, 965 F.3d 475, 487 (6th Cir. 2020).

For divisible statutes, we use a modified categorical approach. *Descamps v. United States*, 570 U.S. 254, 261-62 (2013). A statute is considered "divisible" if it "contain[s] several different crimes," or "lists alternative ways an offense may be committed." *Moncrieffe*, 569 U.S. at 191; *United States v. Smith*, 960 F.3d 883, 887 (6th Cir. 2020). With this approach, we turn to a "limited class of documents," known as *Shepard* documents, to determine which particular offense the defendant was convicted of committing. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Smith*, 960 F.3d at 887. Such documents include an underlying "indictment, jury instructions, or plea agreement and colloquy." *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (en banc) (quoting *Mathis*, 136 S. Ct. at 2249). Following a review of those specific documents, we use the categorical approach to evaluate under which alternative set of elements the defendant was convicted, and then may "do what the categorical approach demands." *Id.* (quoting *Descamps*, 570 U.S. at 257); *Raymore*, 965 F.3d at 487.

## III.

### A.  Controlled Substance Offense

According to the relevant sentencing guideline, a "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance

(or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Under M.C.L. § 333.7401(1), "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form." We have held that M.C.L. § 333.7401 is a divisible statute, so it is appropriate to apply the modified categorical approach before proceeding to the ordinary categorical approach. *See United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017). The Judgment pertaining to Elliott's conviction indicates that he entered a plea for *delivering* less than 50 grams of cocaine. Because we find no reason to believe he was convicted of another crime punishable by M.C.L. § 333.7401, we will proceed with the understanding that Elliott was convicted of *delivering* a controlled substance.

For purposes of M.C.L. § 333.7401, Michigan law defines "deliver" as the "actual, constructive, or *attempted transfer* from one person to another of a controlled substance, whether or not there is an agency relationship." M.C.L. § 333.7105(1) (emphasis added). Based on a plain reading of the definition of "deliver," the least culpable conduct of M.C.L. § 333.7401(2)(a)(iv) is the attempted transfer of a controlled substance.

Although Elliott contends that his prior drug conviction does not fall under the Guidelines' definition of a "controlled substance offense" according to *Havis*, recent case law requires the Court to find otherwise. In *Havis*, we interpreted a similar Tennessee statute, and decided that the defendant's conviction for delivery of a controlled substance, pursuant to Tenn. Code Ann. § 39-17-417(a)(2),[2] was not a "controlled substance offense." *Havis*, 927 F.3d at 387. We reached this conclusion because the parties agreed that the least culpable conduct under Tenn. Code Ann.

---

[2] Tennessee law identically defines "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6).

§ 39-17-417(a)(2) was *attempted delivery*, which the Court found to be broader than what was covered under the Guidelines' definition of a "controlled substance offense." However, since *Havis* was decided, the Court has clarified that the parties' shared assumption was wrong. As we said previously, "the definition of delivery used under Michigan (and federal) law … does not include 'attempted delivery.' Instead, it includes only '*attempted transfer*.'" *United States v. Thomas*, 969 F.3d 583, 584 (6th Cir. 2020) (emphasis added) (citation omitted). Furthermore, because "an *attempted transfer* qualifies as a *completed delivery*," Elliott's drug conviction constitutes a Guidelines controlled substance offense. *Id.* (emphasis added) (citing *Garth*, 965 F.3d at 498).

## B. Crime of Violence

Next, we turn to Elliott's other conviction. As relevant here, the Guidelines define a "crime of violence" as a felony with "an element [of] the use, attempted use, or threatened use of physical force against the person of another" or a "forcible sex offense." U.S.S.G. § 4B1.2(a). M.C.L. § 750.520d(1)(b) makes it unlawful for a person to "engage[] in sexual penetration with another person" if "[f]orce or coercion is used to accomplish the sexual penetration." Michigan law reveals that, as it relates to M.C.L. § 750.520d(1)(b), "force or coercion" includes, but is not limited to these circumstances:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

M.C.L. § 750.520b(1)(f)(i)-(v).

We need not determine whether M.C.L. § 750.520d(1)(b) is divisible, as both parties agree that the least culpable conduct under this Michigan statute is the engagement in sexual penetration against another person through the use of coercion. *See Havis*, 927 F.3d at 385 (explaining that the Court did not need to apply the modified categorical approach because the parties agreed on what conduct was the least culpable under the relevant statute). Pursuant to the categorical approach, we must decide whether criminal sexual conduct in the third degree, through coercion, as defined by Michigan law, constitutes a "crime of violence" according to the Guidelines' definition.

Elliott argues that M.C.L. § 750.520d(1)(b) does not qualify as a "crime of violence" under the Guidelines because the "coercion" required for an individual to violate the Michigan law includes elements that are broader than the elements described in the Guidelines' definition of "crime of violence." He asserts that in regard to his case, for a crime to be declared one "of violence," it must ban the threatened, attempted, or actual use of force, or be considered a forcible sex offense. And consequently, Elliott claims that because M.C.L. § 750.520d(1)(b)'s "coercion" element can be satisfied without any kind of physical force (whether threatened, attempted, or actual) or the completion of a forcible sex offense, these violations of the Michigan law do not constitute a "crime of violence." In support of his contentions, Elliott mentions that under M.C.L. § 750.520d(1)(b), "coercion" can consist of offenses ranging from threats of monetary harm to unethical medical treatments. M.C.L. § 750.520b(1)(f)(iii)-(iv).

Conversely, the government argues that violations of M.C.L. § 750.520d(1)(b) are considered "crimes of violence" according to the Guidelines' commentary. We agree.

Before addressing the government's argument, we must first tackle the initial part of U.S.S.G. § 4B1.2(a)—referred to as the "elements clause." The elements clause defines "crime of violence" as "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). According to Elliott's reading, the applicable section of M.C.L. § 750.520d(1)(b) does not fall under that definition because the use of the coercion necessary to violate the Michigan statute does not undoubtedly require the use of *physical force* as described in the elements clause.

To reach our conclusion on the matter, we must turn to traditional tools of statutory interpretation, and we begin with the plain meaning of the words used in the Guidelines. *See United States v. Babcock*, 753 F.3d 587, 591 (6th Cir. 2014). The language used in the Guidelines is the "starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)).

The Court begins with the most ambiguous phrase in the elements clause—physical force. The Supreme Court has explained that "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Elliott asserts that "coercion" cannot fall under that definition, which places his conviction outside the reach of the elements clause. Pursuant to Michigan law, the term coercion in this context is given its ordinary meaning. *People v. Berlin*, 202 Mich.App. 221, 224, 507 N.W.2d 816, 817 (1993) (per curiam). *Black's Law Dictionary* defines "coerce" as to "compel by force or threat." *Black's Law Dictionary* 315 (10th ed. 2014). A plain reading of the definition of "coerce" reveals that "coercion" is not synonymous with "violent force." When considered in the context of defining a crime of violence in the Guidelines, "violent force" connotes force that is "extreme,"

"sudden," and "strong." *See Johnson*, 559 U.S. at 140 (defining "violent" as it pertains to the Armed Career Criminal Act, 18 U.S.C. § 924(e)); *see also United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) (finding that in regard to their definitions, the Court treats a "crime of violence" under the Guidelines the same as a "violent felony" under 18 U.S.C. § 924(e)). As this Court has held in the past, coercion that can be committed without force, does not fall under the category of a "crime of violence." *See Lowe v. United States*, 920 F.3d 414, 420 (6th Cir. 2019). Violations of M.C.L. § 750.520d(1)(b)'s coercion provision therefore are not crimes of violence under Guidelines' elements clause because the conduct under the Michigan statute is broader than the acts listed in the elements section.

We now move to the residual clause of the "crime of violence" definition. The only relevant term that warrants discussion is "forcible sex offense." As defined in the Guidelines' commentary, "forcible sex offense" includes instances "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or *coerced*." U.S.S.G. § 4B1.2(a) cmt. n.1. This clarification demonstrates that the elements of M.C.L. § 750.520d(1)(b) are covered under U.S.S.G. § 4B1.2(a)'s definition of "forcible sex offense." *See* M.C.L. § 750.520b(1)(f)(i)-(v). The conduct accounted for in each of M.C.L. § 750.520d(1)(b)'s enumerated elements involve interactions "where consent to the conduct is not given or is not legally valid." U.S.S.G. § 4B1.2(a) cmt. n.1.; M.C.L. § 750.520b(1)(f)(i)-(v). Because conduct made unlawful by M.C.L. § 750.520d(1)(b) qualifies as a forcible sex offense, crimes under M.C.L. § 750.520d(1)(b) are thereby classified as "crimes of violence" under the residual clause.

Elliott, however, argues that using the Guidelines' commentary to interpret the actual text of the Guidelines is in conflict with *Havis*. In *Havis*, we found that it was inappropriate to refer to

the commentary for a supplemental definition of "controlled substance offense" because that commentary "add[ed] an offense not listed in the guideline" instead of serving as an *interpretation* of the Guidelines themselves. *Havis*, 927 F.3d at 386. By contrast, here we are applying the commentary's definition to *interpret* "forcible sex offense," as opposed to taking superfluous language into consideration in a manner inconsistent with the Commission's intentions. Furthermore, in *Havis*, we had no reason to defer to the Commission's commentary because the Guidelines straightforwardly named the crimes that were controlled substance offenses in the text. The Commission chose not to go into any detail about what conduct constitutes a "forcible sex offense," and therefore, we are obligated to assume that the commentary was provided to shed light on how to interpret the indeterminate phrase. *See id.* (justifying turning to the Guidelines' commentary "if the guideline which the commentary interprets will bear the construction.") (quoting *Stinson v. United States*, 508 U.S. 36, 46 (1993)).

Accordingly, we find that M.C.L. § 750.520d(1)(b) qualifies as a crime of violence offense under the Guidelines.

## IV.

For the foregoing reasons, we AFFIRM the district court's sentence of Elliott.