RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JANKIE JACKSON (18-5676); PETER COMBS (18-6003),
*Defendants-Appellants*.

Nos. 18-5676/6003

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:17-cr-00014—Gregory F. Van Tatenhove, District Judge.

Argued:  October 6, 2020

Decided and Filed:  April 22, 2021

Before:  DAUGHTREY, DONALD, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Gregory C. Sassé, Mentor, Ohio, for Appellant in 18-5676.  Thomas W. Kidd, Jr., KIDD & URLING LLC, West Chester, Ohio, for Appellant in 18-6003.  Amanda B. Harris, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**  Gregory C. Sassé, Mentor, Ohio, for Appellant in 18-5676.  Thomas W. Kidd, Jr., KIDD & URLING LLC, West Chester, Ohio, for Appellant in 18-6003.  Amanda B. Harris, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

**AMENDED OPINION**

---

CHAD A. READLER, Circuit Judge.  Jankie Jackson and Peter Combs pleaded guilty to participating in a cocaine distribution ring.  Both defendants received elevated sentences, Jackson due to his role as a leader in the drug-distribution conspiracy, and Combs due to his alleged career-offender status.  Seeing no error in Jackson's sentence, we affirm that aspect of the district court's judgment.  Due to intervening circuit precedent, however, we reverse the district court's career-offender finding for Combs and remand for resentencing.

**BACKGROUND**

Jankie Jackson ran a cocaine distribution ring with customers in central and eastern Kentucky.  Peter Combs joined Jackson's operation.  The ring was eventually foiled when DEA agents and police made controlled purchases from Combs and other members of the ring and later arrested those up the distribution chain, including Jackson.  Officers found a storage unit maintained by Jackson and an associate that contained a substantial amount of cocaine, marijuana, and other drug paraphernalia.  Officers also recovered hundreds of thousands of dollars in cash from safety deposit boxes in Jackson's name.

Jackson and Combs were each indicted on charges of conspiracy to distribute cocaine, with Jackson receiving the additional charge of conspiracy to commit money laundering.  Both defendants entered into plea agreements, which preserved their ability to challenge aspects of their respective sentences on appeal.  Combs was sentenced to 188 months' imprisonment and six years supervised release, and Jackson was sentenced to 192 months' imprisonment and ten years supervised release.

Jackson's appeal, however, did not reach us in a traditional fashion.  Despite his assurances to Jackson, Jackson's appointed trial counsel did not file an appeal within the required timeframe set by Federal Rule of Appellate Procedure 4(b).  Nearly six months after the district court entered judgment, Jackson wrote a letter to the district court explaining that he wanted to appeal his sentence, and that the delay in doing so was attributable to his counsel.

Three days later, the district court received another letter from Jackson to the same effect. The district court construed Jackson's initial letter as a *pro se* motion requesting leave to file a late appeal, and his second as a direct notice of appeal, which served to transfer the case to the Circuit. With the case now before us, we ordered Jackson to explain why his appeal should not be dismissed as untimely, an outcome for which the government made an appearance to support. Jackson again attributed the delay to his counsel's error.

While these events were unfolding in our Court, Jackson's request to file a late appeal (as construed by the district court from Jackson's initial letter) remained pending in the district court. Once the government's deadline to respond passed, the district court granted Jackson's unopposed request. The absence of the government's opposition in the district court, we then observed, raised the possibility that the government had waived the right to oppose Jackson's appeal as untimely in our Court. We left resolution of that question to this panel, in addition to any merits issues raised by Jackson and Combs. The government in turn withdrew its opposition to the timeliness of Jackson's appeal.

With the stage now set, we raise the appellate curtain on this two-act proceeding, first resolving Combs's appeal, and then Jackson's.

## PETER COMBS'S APPEAL

*Controlled Substance Offense*. The district court determined that Combs was a "career offender," as that term is used in § 4B1.1 of the Sentencing Guidelines, which elevated Combs's sentence range from 37 to 46 months to 188 to 235 months. To qualify as a career offender under the Sentencing Guidelines, Combs must have had two or more prior convictions for a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1. At sentencing, Combs's two prior offenses included Conspiracy to Distribute a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and trafficking in the second degree, in violation of Ky. Rev. Stat. § 218A.1413. The first issue for consideration is whether Combs's state felony offense qualifies as a "controlled substance offense" under the Guidelines. The district court held that the offense did so qualify, a decision we review *de novo*. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir.) (en banc), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019).

In resolving whether Combs's drug offenses qualify him for career-offender status, we employ the now well-known, if not always well-loved, "categorical approach," applicable in this and other sentencing contexts. *Cf. Quarles v. United States*, 139 S. Ct. 1872, 1881 (2019) (Thomas, J., concurring) (stating that "the categorical approach . . . is difficult to apply and can yield dramatically different sentences depending on where [the crime] occurred"); *Mathis v. United States*, 136 S. Ct. 2243, 2258 (2016) (Kennedy, J., concurring) (noting the "stark illustration of the arbitrary and inequitable results produced by applying an elements based approach" to sentencing enhancements and arguing that "Congress could not have intended vast sentencing disparities for defendants convicted of identical criminal conduct in different jurisdictions"); *see United States v. Galloway*, 439 F.3d 320, 323–24 (6th Cir. 2006) (holding that, as relevant here, Armed Career Criminal Act decisions from the Supreme Court are "fully applicable to Sentencing Guideline cases"). We begin with the Guidelines, which describe the types of offenses that, for career-offender purposes, qualify as a "controlled substance offense" at sentencing. *See* U.S.S.G. § 4B1.2(b). We then compare those generic offenses to the least culpable elements of Combs's state offense to determine if the latter exceeds the conduct described in the Guidelines. *Mathis*, 136 S. Ct. at 2248. If Combs's Kentucky offense is no broader than the generic offenses, it qualifies as a "controlled substance offense." If, on the other hand, the state offense is broader than the generic offenses listed in the Guidelines, we employ other tools to assess whether the state offense qualifies for purposes of the career-offender enhancement. *See id.* at 2249 (explaining the "modified categorical approach").

With this framework in mind, we turn to the conduct proscribed by the Sentencing Guidelines. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020). The Guidelines define a "controlled substance offense" as any felony "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Compare that to the relevant aspects of Combs's predicate state offense. *Garth*, 965 F.3d at 495. Under Kentucky law, "[a] person is guilty of trafficking in a controlled substance in the second degree when . . . [h]e or she knowingly and unlawfully traffics in . . . [t]en (10) or more dosage units of a controlled substance classified in Schedules I and II that is not a narcotic drug." Ky. Rev. Stat. § 218A.1413. Kentucky law in

turn defines "traffic" to mean "manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance." *Id.* § 218A.010(56).

Comparing the Guidelines definition of a "controlled substance offense" with Kentucky's "trafficking in a controlled substance" offense, we ask whether there is any daylight between the two. *Garth*, 965 F.3d at 496. Combs believes there is, because the Guidelines do not include the act of "transfer," which Kentucky law defines as "to dispose of a controlled substance to another person without consideration and not in furtherance of commercial distribution." Ky. Rev. Stat. § 218A.010(57). At first blush, that argument has some appeal. But Combs fails to consider that the Guidelines draw their definitions from the Controlled Substances Act, which paints a more complete picture of a "controlled substance offense." *See* 28 U.S.C. § 994(h)(2)(B) ("The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and . . . has previously been convicted of two or more prior felonies, each of which is . . . *an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841) . . . .*" (emphasis added)). Included in the generic offenses listed in the Guidelines is possessing a controlled substance with the intent to "distribute" the substance. U.S.S.G. § 4B1.2(b). Adding meat to that proverbial bone, the CSA defines "distribute" to mean to "deliver . . . a controlled substance or a listed chemical." 21 U.S.C. § 802(11). And "deliver," the CSA tells us, "mean[s] the actual, constructive, or attempted *transfer* of a controlled substance or a listed chemical, whether or not there exists an agency relationship." *Id.* § 802(8) (emphasis added). As this definitional chain reveals, one who transfers is guilty of delivering, and one who delivers is guilty of distributing. It follows that the CSA includes "transfer" to define "distribution," meaning the generic offense in the Guidelines encompasses the conduct of transfer. In other words, the Kentucky statute falls safely within the confines of the generic offenses listed in the Guidelines. A transfer under Kentucky law is therefore a controlled-substance offense under U.S.S.G. § 4B1.1(b).

Combs resists this conclusion in three respects. First, he argues that our en banc decision in *Havis* prohibits reliance on definitions from the CSA. We disagree. By way of background, the district court in *Havis* determined that the defendant qualified for career-offender status

based in part upon a prior Tennessee conviction for violating a statute that prohibited the sale and delivery of cocaine. *Havis*, 927 F.3d at 384. The parties there agreed that, under Tennessee law, delivery included "attempted transfer" as the least culpable conduct. *Id.* Relying on the commentary to the Guidelines, the district court held that the Guidelines generic definition of a controlled substance offense also included attempt offenses. *Id.* at 384 (quoting U.S.S.G. § 4B1.2(b) cmt. n.1). By doing so, we observed, the district court impermissibly utilized the commentary to expand the substantive offenses included in the Guidelines, even though Congress was never presented with the commentary—unlike the Guidelines themselves, which Congress had the opportunity to modify or reject each Guideline section before it took effect. *Id.* at 387; *Stinson v. United States*, 508 U.S. 36, 44 (1993). And if the commentary cannot be used to interpret the Guidelines, how, asks Combs, can a separate statute—the CSA—be used for the same purpose? Because here, unlike in *Havis*, utilizing the CSA does not broaden the text of the Guidelines. Congress enacted the CSA. 21 U.S.C. §§ 801–904. It then incorporated the substantive offenses articulated in the CSA into the Guidelines through 28 U.S.C. § 994, which outlines the "Duties of the [Sentencing] Commission." *See* 28 U.S.C. § 994(h)(2)(B) (requiring that career offender status result from "two or more prior felonies, each of which is . . . an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841) . . . ."). In light of these legislative directives, we routinely utilize the CSA (even after *Havis*) in defining the relevant conduct covered by the Guidelines. *See Garth*, 965 F.3d at 496 (citing 21 U.S.C. §§ 802(8) and (11)) (relying on the CSA to define relevant federal conduct); *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam) (citing 21 U.S.C. §§ 802(8) and (11)) (same; *see also United States v. Powell*, --- F. App'x ---, No. 19-6461, 2020 WL 7054135, at *6 (6th Cir. Dec. 2, 2020) (citing 21 U.S.C. §§ 841(a)(1) and 802(8), (11)) (relying on the CSA to define relevant federal conduct because "[t]he Guidelines . . . track[] the Federal Controlled Substances Act"); *United States v. Havis*, 929 F.3d 317, 319 (6th Cir. 2019) (en banc) (Sutton, J., concurring in the denial of en banc reconsideration) ("Though [the Guidelines] do not define distribution, I see no reason to give the word . . . a different meaning from the one in the [CSA].").

Second, Combs argues that the lack of commercial intent in the Kentucky statute makes it broader than the generic definition. The least culpable conduct criminalized by Ky. Rev. Stat.

§ 218A.1413, by way of "transfer," is "disposing without consideration and not in furtherance of commercial distribution." Ky. Rev. Stat. § 218A.010(57). Combs asserts that the phrase "without consideration and not in furtherance of commercial distribution" makes Kentucky's definition of transfer broader than the Guidelines generic offense, which Combs says includes only those distributions or transfers that are commercial in nature. We have previously held, however, that sharing a controlled substance without compensation satisfies the substantive offense of 21 U.S.C. § 841(a)(1)—possession with intent to distribute. *See United States v. Layne,* 192 F.3d 556, 569 (6th Cir.1999) (citing *United States v. Washington*, 41 F.3d 917, 920 (4th Cir. 1994), for the proposition that "a person who shares drugs with a friend possesses the drug with an intent to distribute"). Because the Guidelines are interpreted against the backdrop of the CSA, that same reading of the CSA applies in the sentencing context. Just recently, the Eighth Circuit reached a similar conclusion in the context of what constitutes a "controlled substance offense" for purposes of the § 4B1.2(b) sentencing enhancement. *See United States v. Clayborn*, 951 F.3d 937, 940 (8th Cir.) (rejecting the argument that § 4B1.2 applies only to commercial drug trafficking crimes), *cert. denied*, 141 S. Ct. 391 (U.S. Oct. 5, 2020). Citing Black's Law Dictionary's definition of "distribute," the Eighth Circuit held that "distribute" as used in § 841 does not require a commercial element. *Id.* at 939 (explaining that distribute means "to apportion; to divide among several; to arrange by class or order; to deliver, and to spread out; to disperse" and concluding that "nothing in this ordinary definition requires a 'commercial aspect.'" (cleaned up)). We agree, and thus reject Combs's argument that distribution requires a commercial aspect.

Finally, Combs argues that Kentucky's definition of transfer, by its use of the word "dispose," covers conduct that falls outside the Sentencing Guidelines. According to Combs, a person in Kentucky can be guilty of transferring (and thus trafficking) a controlled substance if he innocently picks up and throws away drugs—in other words, if he takes steps to "dispose" of them. But Combs's argument is supported neither by the statute nor by case law. The Kentucky statute has a mens rea requirement of "knowingly and unlawfully" conducting the crime in question. Ky. Rev. Stat. § 218A.1413. One who innocently throws away drugs is thus unlikely to be guilty of "knowingly and unlawfully" violating Kentucky law. *See* Ky. Rev. Stat. § 501.020(2) ("A person acts knowingly with respect to conduct or to a circumstance described by

a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists."). Tellingly, Combs has not identified a single case where one has been prosecuted under the Kentucky statute because she innocently picked up and threw away drugs. Combs thus fails to demonstrate a "realistic probability" that Kentucky law applies in the way he suggests. *Garth*, 965 F.3d at 498 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Because U.S.S.G. § 4B1.2 covers all of the conduct criminalized by the Kentucky statute, Combs's Kentucky trafficking offense categorically qualifies as a "controlled substance offense" under the Guidelines.

*   *   *   *   *   *   *

Our analysis, however, does not end there. After the parties submitted their appellate briefs in this case, we held in *United States v. Cordero* that "in light of *Havis*, conspiracy to distribute controlled substances is not a 'controlled substances offense' under § 4B1.2(b)." 973 F.3d 603, 626 (6th Cir. 2020); *see also United States v. Stephens*, 812 F. App'x 356, 357 (6th Cir. 2020) (mem.) (per curiam). Combs now raises the same argument, namely, that his other prior offense, conspiracy to distribute, no longer qualifies as a "controlled substance offense," meaning that he does not qualify for career-offender status. We agree with Combs, and thus remand the case for resentencing on that basis.

<strong>JANKIE JACKSON'S APPEAL</strong>

*Rule 4(b).* Turning to Jackson's claims, we must first navigate the procedural maze underlying his appeal. Ordinarily, a defendant can perfect a criminal appeal by filing a notice of appeal within 14 days of the judgment. Fed. R. App. P. 4(b)(1)(A). The district court can extend the filing period up to 30 days if it finds good cause or excusable neglect. *Id.* at 4(b)(4). Issues regarding the timeliness of a defendant's appeal are sometimes resolved by the district court, and sometimes by the court of appeals. If the defendant files a motion for leave to file a late notice of appeal with the district court, the district court customarily would resolve the timeliness question in the first instance, should the government oppose the motion. On the other hand, if a defendant files a notice of appeal, jurisdiction transfers to this Court. If the government believes

the defendant's notice was untimely, it can oppose the appeal on timeliness grounds by motion, or in a brief. *See United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011). And if the government is correct, we would be obliged to dismiss the appeal. *Id.*

Jackson's appeal raises timeliness issues, but not in the typical fashion just described. The district court construed Jackson's initial letter (sent roughly six months after judgment) as a request for leave to allow an appeal. And it treated a subsequent letter as Jackson filing an appeal even before being granted permission. As a result, Jackson's case was transferred to this Court while his motion for leave was still pending with the district court. When the government did not respond to the motion, the district court granted Jackson his requested relief. Yet the government did oppose in this Court Jackson's appeal that emanated from his second letter to the district court, only to drop that opposition later when the procedural aspects of the case became thorny. All of this raises the question whether the government can in fact withdraw its opposition to the appeal.

In this instance, we believe that it can. Unlike in civil appeals governed by the jurisdictional requirements of Federal Rules of Appellate Procedure 4(a), Rule 4(b) is merely a claims-processing rule established by the Supreme Court, not Congress. *See Gaytan-Garza*, 652 F.3d at 681 ("[A] jurisdictional time period is established by statute and . . . a time period established only by a rule is merely a non-jurisdictional claim-processing rule." (citing *Bowles v. Russell*, 551 U.S. 205, 210–13 (2007)). As a result, "we are not required to dismiss late-filed criminal appeals unless the government has raised the issue, which it can do by motion or in its briefing." *Id.* And while the government here initially did "raise[] the issue," it later withdrew its timeliness objection before any order was issued. Accordingly, we are not foreclosed from honoring the government's request.

That said, it bears reminding that we retain the power to dismiss an untimely appeal sua sponte if the appeal "implicates the important judicial interests of finality of convictions and efficient administration of claim processing." *Id.* We did so in *Gaytan-Garza*, where the defendant filed his appeal four years after the deadline. *Id.* Citing that decision, the D.C. Court of Appeals recently dismissed sua sponte cases that were filed four and seven years late, respectively. *Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 493 (D.C. 2020) (holding that

appellants were "on the *Gaytan-Garza* side of the ledger"). At the other end of the playing field, the Tenth Circuit declined to dismiss sua sponte a criminal appeal filed just one day late. *United States v. Mitchell*, 518 F.3d 740, 751 (10th Cir. 2008). Between these two yardsticks is Jackson's six-months-late appeal. In some circumstances, that amount of delay might be considered enough to warrant dismissal, if it implicated important judicial interests. But those concerns are not present here.

That leaves one other procedural housekeeping matter. As mentioned, the district court granted Jackson leave to file a late notice of appeal, but did so only after Jackson had filed a separate notice of appeal, which transferred jurisdiction to this Court. As a result of that transferal, the district court lacked jurisdiction to grant Jackson's motion for leave. *United States v. Carman*, 933 F.3d 614, 618 (6th Cir. 2019) (explaining that a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). We thus vacate that order.

*Jackson's Sentencing*. Having navigated this procedural thicket, we turn to Jackson's challenges to his sentence. He first disputes the application of the four-level leader enhancement under U.S.S.G. § 3B1.1(a). Before the district court, however, Jackson's counsel indicated that Jackson did not object to the enhancement because he "couldn't have, in good faith, objected to his leadership role." That concession constitutes a procedural waiver. *See United States v. Hall*, 373 F. App'x 588, 591–92 (6th Cir. 2010) ("A defendant waives a known claim by "agree[ing] in open court with a judge's proposed course of conduct." (alteration in original) (citing *United States v. Aparco–Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002))). And "[a]lthough we may review *forfeited* claims, which . . . were raised for the first time on appeal, for plain error, we may not review waived claims at all." *Id.* (first citing *United States v. Stines*, 313 F.3d 912, 917–18 (6th Cir. 2002); then citing *Aparco–Centeno*, 280 F.3d at 1088). Even if the claim were preserved, there were ample reasons for the leadership designation. Among them, Jackson recruited and supervised participants, he held a substantial amount of the cash proceeds, and the conspiracy involved seven individuals. *See* U.S.S.G. § 3B1.1 (requiring five or more participants for the enhancement).

Jackson fares no better in challenging the mandatory-minimum 20-year sentence he received in accordance with 21 U.S.C. § 841(b)(1)(A), due to his prior marijuana-trafficking conviction. Here too, Jackson's claim runs into procedural headwinds. His plea agreement stated that he was eligible for the enhanced sentence based on a prior qualifying felony drug conviction. And his counsel similarly stated that Jackson's prior Kentucky marijuana offense was a qualifying felony conviction, a prototypical example of a procedural waiver. Jackson's claim fails on the merits as well. At the time he was charged and sentenced, § 841(b)(1)(A) provided for a 20-year mandatory-minimum sentence for offenses involving certain quantities of drugs after a defendant had sustained "a prior conviction for a felony drug offense [that] has become final." 21 U.S.C. §§ 802(44), 841(b)(1)(A). A qualifying felony includes a crime that involves marijuana and is punishable by more than one year of imprisonment. 21 U.S.C. § 802(44). Jackson's 1990 felony hit both marks—marijuana trafficking and a ten-year sentence. There was thus no error in taking this felony into consideration when calculating Jackson's sentence.

\* \* \* \* \*

Alternatively, Jackson asks that we construe his letters to the district court as a motion for relief due to ineffective counsel under 28 U.S.C. § 2255. The district court, however, did not interpret the letters that way and refrained from addressing the issue. Settled practice in our Court forecloses Jackson's request. We customarily do not address ineffective assistance of counsel claims on direct appeal, especially when a defendant raises those claims "for the first time" in this Court, as the record typically is not developed sufficiently to address such a claim. *See United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). That is the case here, where Jackson has almost no record on which to proceed. Jackson, of course, can raise those claims in a future action if he so chooses.

**CONCLUSION**

For these reasons, we AFFIRM Jackson's sentence and VACATE the district court's order granting Jackson's motion for leave to file a late notice of appeal. We also AFFIRM the district court's finding that Ky. Rev. Stat. § 218A.1413 qualifies as a "controlled substance

offense." Due to intervening circuit precedent, however, we REVERSE the district court's finding that Combs qualifies as a career offender and REMAND for resentencing in light of this opinion.