RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEFFERY HAVIS,

*Defendant-Appellant*.

No. 17-5772

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:16-cr-00121-1—Travis R. McDonough, District Judge.

Decided and Filed:  June 6, 2019

BEFORE:  COLE, Chief Judge; DAUGHTREY, MOORE, CLAY, GIBBONS, SUTTON,
GRIFFIN, KETHLEDGE, WHITE, STRANCH, DONALD, THAPAR, BUSH, LARSEN,
NALBANDIAN, READLER and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON PETITION FOR REHEARING EN BANC AND REPLY:**  Jennifer Niles Coffin,
FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee,
for Appellant. **ON RESPONSE IN OPPOSITION:** Luke A. McLaurin, William A. Roach, Jr.,
UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:**
Caleb Kruckenberg, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Amicus
Curiae.

_____

## OPINION

_____

PER CURIAM.  Although it is neither a legislature nor a court, the United States
Sentencing Commission plays a major role in criminal sentencing.  But Congress has placed

careful limits on the way the Commission exercises that power.  Jeffery Havis argues that the Commission stepped beyond those limits here and, as a result, he deserves to be resentenced. We agree and **REVERSE** the decision of the district court.

## I. BACKGROUND

In 2017, Havis pled guilty to being a felon in possession of a firearm.  *See* 18 U.S.C. § 922(g)(1).  Under the Sentencing Guidelines, a person convicted under § 922(g)(1) starts with a base offense level of 14; but that level increases to 20 if the defendant has a prior conviction for a "controlled substance offense."  *See* USSG §§ 2K2.1(a)(4), (a)(6).  At sentencing, the district court decided that Havis's 17-year-old Tennessee conviction for selling and/or delivering cocaine was a controlled substance offense under the Guidelines.  Havis objected because the Tennessee statute at issue criminalizes both the "sale" and "delivery" of cocaine, and his charging documents did not specify whether his conviction was for sale, delivery, or both.  *See* Tenn. Code Ann. § 39-17-417(a)(2)–(3).  Under Tennessee law, "delivery" of drugs means "the actual, constructive, *or attempted* transfer from one person to another of a controlled substance." *Id.* § 39-17-402(6) (emphasis added).  Havis therefore argued that his Tennessee conviction was not a controlled substance offense because it encompassed the mere *attempt* to sell cocaine, and the Guidelines' definition of "controlled substance offense" does not include attempt crimes.  *See* USSG § 4B1.2(b).[1]  The district court overruled Havis's objection because an unpublished case of this circuit, *United States v. Alexander*, held that any violation of § 39-17-417 is a controlled substance offense.  686 F. App'x 326, 327–28 (6th Cir. 2017) (per curiam).  In combination with other adjustments, that left Havis with a Guidelines range of 46 to 57 months.  The district court sentenced him to 46 months, and he appealed.

---

[1]A "controlled substance offense" under § 4B1.2(b) means:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

A panel of this court affirmed Havis's sentence for one reason: our decision in *United States v. Evans* held that the definition of "controlled substance offense" in § 4B1.2(b) includes attempt crimes. *United States v. Havis*, 907 F.3d 439, 442 (6th Cir. 2018) (citing *United States v. Evans*, 699 F.3d 858, 866–67 (6th Cir. 2012)). The *Evans* court relied on the Sentencing Commission's commentary to § 4B1.2(b), which states that a controlled substance offense "includes 'the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.'" *Id.* at 866 (quoting USSG § 4B1.2(b) comment (n.1)). But Havis objects to this commentary on a ground never raised by the parties in *Evans*: he argues that the Guidelines' text says nothing about attempt, and the Sentencing Commission has no power to add attempt crimes to the list of offenses in § 4B1.2(b) through commentary. We granted en banc review to address that narrow claim.[2]

## II. ANALYSIS

### A. Legal Framework

Whether a prior conviction counts as a predicate offense under the Guidelines is a question of law subject to de novo review. *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009). Employing the categorical approach, we do not consider the *actual* conduct that led to Havis's conviction under the Tennessee statute at issue; instead, we look to the *least of the acts criminalized* by the elements of that statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013). If the least culpable conduct falls within the Guidelines' definition of "controlled substance offense," then the statute categorically qualifies as a controlled substance offense. But if the least culpable conduct falls outside that definition, then the statute is too broad to qualify, and the district court erred by increasing Havis's offense level.

The parties agree that the least culpable conduct covered by § 39-17-417 is the attempted delivery of a controlled substance. *See* Tenn. Code Ann. § 39-17-402(6). The question before the court, then, is whether the definition of "controlled substance offense" in § 4B1.2(b) includes attempt crimes. The Sentencing Commission said it does in the commentary to § 4B1.2(b). *See*

---

[2]The panel decision addressed (and rejected) a number of alternative grounds for finding that Havis's Tennessee conviction did not qualify as a controlled substance offense. *See Havis*, 907 F.3d at 444–47. Havis does not revisit those claims in his en banc petition.

USSG § 4B1.2(b) comment (n.1).  But the plain language of § 4B1.2(b) says nothing about attempt crimes.  On appeal, Havis maintains that we must look to the actual text of Guideline § 4B1.2(b).  The Government asks us to defer to the Commission's commentary.

**B.  Role of the Sentencing Commission**

To decide which construction of § 4B1.2(b) prevails, we begin with the Sentencing Commission and its role in our constitutional system.  Congress created the Commission as an independent body "charged [] with the task of establish[ing] sentencing policies and practices for the Federal criminal justice system."  *Stinson v. United States*, 508 U.S. 36, 40–41 (1993) (citation and internal quotation marks omitted).  The Commission fulfills its purpose by issuing the Guidelines, which provide direction to judges about the type and length of sentences to impose in a given case.  *Id.* at 41.  Although judges have some discretion to deviate from the Guidelines' recommendations, our procedural rules "nevertheless impose a series of requirements on sentencing courts that cabin the exercise of that discretion."  *Peugh v. United States*, 569 U.S. 530, 543 (2013).  A judge cannot stray from a defendant's Guidelines range, for example, without first giving an adequate explanation for the variance.  *See id.*  The Commission thus exercises a sizable piece "of the ultimate governmental power, short of capital punishment"—the power to take away someone's liberty.  *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018) (citation omitted).

That power is ordinarily left to two branches of government—first to the legislature, which creates a range of statutory penalties for each federal crime, and then to judges, who sentence defendants within the statutory framework.  But the Commission falls squarely in neither the legislative nor the judicial branch; rather, it is "an unusual hybrid in structure and authority," entailing elements of both quasi-legislative and quasi-judicial power.  *Mistretta v. United States*, 488 U.S. 361, 412 (1989).  In *Mistretta*, the Supreme Court explained how the Commission functions in this dual role without disrupting the balance of authority in our constitutional structure.  Although the Commission is nominally a part of the judicial branch, it remains "fully accountable to Congress," which reviews each guideline before it takes effect.  *Id.* at 393–94; *see also* 28 U.S.C. § 994(p).  The rulemaking of the Commission, moreover, "is subject to the notice and comment requirements of the Administrative Procedure Act."  *Id.* at

394; *see also* 28 U.S.C. § 994(x).  These two constraints—congressional review and notice and comment—stand to safeguard the Commission from uniting legislative and judicial authority in violation of the separation of powers.

Unlike the Guidelines themselves, however, commentary to the Guidelines never passes through the gauntlets of congressional review or notice and comment.  That is also not a problem, the Supreme Court tells us, because commentary has no independent legal force—it serves only to *interpret* the Guidelines' text, not to replace or modify it.  *See Stinson*, 508 U.S. at 44–46; *see also United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (en banc) ("[T]he application notes are *interpretations of*, not *additions to*, the Guidelines themselves . . . .").  Commentary binds courts only "if the guideline which the commentary interprets will bear the construction."  *Stinson*, 508 U.S. at 46.  Thus, we need not accept an interpretation that is "plainly erroneous or inconsistent with the" corresponding guideline.  *Id.* at 45 (citation omitted).

### C.  Defining "Controlled Substance Offense"

The Government urges us to find that the commentary at issue here—Application Note 1 to § 4B1.2, which adds attempt crimes to the list of controlled substance offenses under § 4B1.2(b)—is not a "plainly erroneous" interpretation of the corresponding guideline.[3]  But the Government sidesteps a threshold question: is this really an "interpretation" at all?  The guideline expressly names the crimes that qualify as controlled substance offenses under § 2K2.1(a)(4); none are attempt crimes.  And the Commission knows how to include attempt crimes when it wants to—in subsection (a) of the same guideline, for example, the Commission defines "crime of violence" as including offenses that have "as an element the use, *attempted* use, or threatened use of physical force against the person of another."  USSG § 4B1.2(a) (emphasis added).

---

[3]The Government argues in the alternative that the real commentary at issue is Application Note 1 to § 2K2.1, which cross-references the definition of "controlled substance offense" in Application Note 1 to § 4B1.2. The Government never made that argument in the district court or before the initial panel on appeal and arguably has forfeited its right to do so now.  At any rate, it makes no difference whether we begin with § 2K2.1 to determine the meaning of "controlled substance offense."  The commentary to § 2K2.1 directs us to apply "the meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2."  If anything, the Government's proposed definition—which would require us to defer to commentary *on* other commentary—would carry an even more tenuous connection to the guideline's text.

To make attempt crimes a part of § 4B1.2(b), the Commission did not interpret a term in the guideline itself—no term in § 4B1.2(b) would bear that construction.**4** Rather, the Commission used Application Note 1 to *add* an offense not listed in the guideline. But application notes are to be "*interpretations of*, not *additions to*, the Guidelines themselves." *Rollins*, 836 F.3d at 742. If that were not so, the institutional constraints that make the Guidelines constitutional in the first place—congressional review and notice and comment— would lose their meaning. *See Winstead*, 890 F.3d at 1092 ("If the Commission wishes to expand the definition of 'controlled substance offenses' to include attempts, it may seek to amend the language of the guidelines by submitting the change for congressional review."). The Commission's use of commentary to add attempt crimes to the definition of "controlled substance offense" deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses.

## III. CONCLUSION

The Guidelines' definition of "controlled substance offense" does not include attempt crimes. Because the least culpable conduct covered by § 39-17-417 is attempted delivery of a controlled substance, the district court erred by using Havis's Tennessee conviction as a basis for increasing his offense level. We therefore **REVERSE** the district court's decision and **REMAND** for further proceedings consistent with this opinion.

---

**4**The Government also suggests that the use of the term "prohibits" in § 4B1.2(b) expands the scope of the guideline to cover attempt crimes. Once again, the Government never made this argument in the district court or before the initial panel on appeal. Regardless, the guideline's boilerplate use of the term "prohibits" simply states the obvious: criminal statutes proscribe conduct. *See, e.g.*, *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393 (1926) ("Penal statutes prohibit[] the doing of certain things, and provid[e] a punishment for their violation . . . ."). That does not help the Government.