NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0401n.06

Case Nos. 19-1638/1659

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 13, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DAVID RICHARD UMINN (19-1638); | ) | THE WESTERN DISTRICT OF |
| MICHAEL JOHN MARCON (19-1659), | ) | MICHIGAN |
| Defendants-Appellants. | ) | |
| | ) | |

Before: SILER, MOORE, and NALBANDIAN, Circuit Judges.

**SILER**, Circuit Judge. Appellants David Richard Uminn and Michael John Marcon pleaded guilty for their respective roles in a methamphetamine distribution conspiracy. In this consolidated appeal, Uminn and Marcon challenge their sentences.

Uminn argues that the district court erred by applying the premises sentencing enhancement, USSG § 2D1.1(b)(12), based on activity that occurred at his Dearborn Avenue residence in Kalamazoo, Michigan ("Dearborn residence"). But, while this case presents a close call and an atypical application of the premises enhancement, we affirm the district court under a deferential standard of review. That is because: (1) there was evidence that Uminn was heavily involved in methamphetamine distribution activity, (2) several codefendants recalled specific instances of drug distribution activity at the residence, and (3) there appeared to be a distribution

amount of methamphetamine at the Dearborn residence. As a result, Uminn's sentence is AFFIRMED.

Marcon presents two issues for review. First, he contends that the district court erred in sentencing him as a career offender. Second, he argues that the district court erred by relying on codefendant Raymond Stovall's post-*Miranda* statement to law enforcement—as opposed to Marcon's own proffer-protected statement—to determine the drug quantity attributable to Marcon. The government concedes that the district court erred in sentencing Marcon as a career offender in light of the decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), which was rendered after Marcon was sentenced. As a result, Marcon's sentence is VACATED and the matter is REMANDED to the district court for resentencing.

I.

Uminn and Marcon pleaded guilty to conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. The probation office prepared a presentence report ("PSR") for both appellants.

*Uminn's Sentence.* Uminn's PSR calculated a base offense level of 38 and added a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance for a total offense level of 40. Below, Uminn disputed the two-level enhancement for maintaining a premises and the denial of credit for acceptance of responsibility. He also moved for a downward variance.

At sentencing, the district court noted that the case presented "a close call" but ultimately overruled Uminn's objection and applied the enhancement. It reasoned that even though the Dearborn residence was used as Uminn's primary residence, "one of the principal activities at the house was at least the use of crystal meth." The court noted that Uminn was distributing meth to

other occupants of the residence and that the occupants used the residence as "their own private drug house." Furthermore, it stated that other information contained in the PSR, including proffers from co-conspirators, created a "solid inference" that other drug activity was occurring at the residence, including cutting product and distribution. Finally, the court observed that "significant quantities" of methamphetamine "beyond simple personal use" were discovered during a search of the residence.

Thus, after applying the premises enhancement and awarding credit for acceptance of responsibility, the court calculated a total offense level of 37 and a criminal history category of III for Uminn, resulting in a guidelines range of 262 to 327 months. It also denied Uminn's motion for a downward variance. In the end, the court sentenced Uminn to 262 months' imprisonment.

*Marcon's Sentence.* Marcon's PSR assigned a base offense level of 37 based on the probation office's conclusion that Marcon was a career offender. Without the career offender enhancement, Marcon's base offense level was 36 from Stovall's statement that Marcon was responsible for 3.7 kg of methamphetamine. A three-level reduction for acceptance of responsibility brought Marcon's base offense level down to 34, and the career offender status gave him a criminal history category of VI.

The court relied on Stovall's statement and attributed the greater drug quantity to Marcon. Even so, the court granted the government's motion for downward departure and varied downward on Marcon's motion based on the § 3553(a) factors for a total sentence of 156 months' imprisonment.

## II.

Uminn and Marcon raise three issues on appeal. First, Uminn argues that the district court erred by applying the premises enhancement. Second, Marcon contends that the court erred by

sentencing him as a career offender. Third, Marcon argues that the court erred by relying on codefendant Stovall's statement to determine the drug quantity attributable to him.

According the district court's application of the premises enhancement due deference, we affirm Uminn's sentence.

Marcon's sentence, however, is vacated and the matter is remanded for resentencing. The government concedes that Marcon was erroneously sentenced as a career offender based on *Havis*, 927 F.3d at 387. As a result, we need not consider Marcon's drug-quantity argument.

A.

*Premises Enhancement.* The sentencing guidelines instruct courts to increase the offense level by two points "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." USSG § 2D1.1(b)(12). Determining whether the district court erred in applying the premises enhancement involves a fact-intensive review. On this record, we give due deference to the district court's application of the premises enhancement.

*Standard of Review.* When a defendant challenges a sentencing enhancement, the reviewing court "shall accept the findings of fact of the district court unless they are clearly erroneous [and] shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Thus, in our circuit, "[i]t is well-settled that we overturn a court's factual findings in regard to the Sentencing Guidelines only if they are clearly erroneous." *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (citing *United States v. Brawner*, 173 F.3d 966, 971 (6th Cir. 1999)). Our circuit has not, however, settled on a clear standard of review for assessing a district court's application of sentencing enhancements. *United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014). And here, in an atypical case where the district court

acknowledged application of the premises enhancement was "a close call," the standard of review matters.

The Supreme Court has suggested that the clearly erroneous standard applies to factual findings while a "deferential review [is] appropriate" when "legal principles [are] at issue." *Buford v. United States*, 532 U.S. 59, 64 (2001). Even so, it is clear that de novo review should not guide this case. *See Jackson-Randolph*, 282 F.3d at 390 (explaining that more deference is owed where the enhancement at issue is of a "fact-specific nature"); *United States v. Solorio*, 337 F.3d 580, 600 (6th Cir. 2003) (describing the *Buford* factors). Although the Supreme Court has not specified the exact deference that applies to mixed questions of law and fact in the sentencing context, some deference applies even if the issue touches on some aspect of law. *Buford*, 532 U.S. at 66 (affirming the appellate court's decision to review the "District Court's . . . decision deferentially"). As a result, we engage in clear error review of factual findings, and we accord due deference to the district court's application of the guidelines to the facts.

*Application of the Premises Enhancement.* The "drug-house" or premises enhancement "applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). Only the third element is at issue here. It is undisputed that Uminn used methamphetamine at the Dearborn residence. Furthermore, Uminn clearly had a possessory interest in or "maintained" the residence. *See id.* Thus, the principal question is whether Uminn maintained the Dearborn residence "for the purpose of manufacturing or distributing" methamphetamine. *See id.*

The fact that Uminn lived at the residence does not preclude application of the premises enhancement. Distribution of drugs need not be the sole purpose for which a premises was

maintained, but drug distribution must be a primary or principal use rather than an incidental or collateral use of the premises for the enhancement to apply. USSG § 2D1.1(b)(12) cmt. n.17; *Johnson*, 737 F.3d at 447. As such, the guideline commentary instructs us to "consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes" in determining whether drug manufacturing or distribution was "one of the defendant's primary or principal uses for" the Dearborn residence. USSG § 2D1.1(b)(12) cmt. n.17. Thus, we turn to review of the facts that the district court relied on in applying the enhancement.

Uminn's use of methamphetamine at the Dearborn residence does not support application of the premises enhancement. The district court noted that "one of the principal activities at the house was . . . the use of crystal meth." No one disputes that Uminn used methamphetamine at the Dearborn residence. In fact, by Uminn's own admission, he personally used a half ounce of methamphetamine per day. But personal use is not distribution. And the premises enhancement will not apply where a "defendant keeps drugs in the home for casual personal use." *Johnson*, 737 F.3d at 449.

Even so, the district court found that Uminn was doing more than casually using drugs at the residence. It noted that "significant quantities" of suspected crystal meth were found during a search of the residence. Specifically, the PSR states that 42 grams of suspected methamphetamine were located during a search of the Dearborn residence. The district court concluded that 42 grams of methamphetamine constituted an amount "beyond simple personal use."

Uminn contends that his 42 grams of methamphetamine did not constitute a distribution quantity. But the district court was not bound by Uminn's self-reported personal use statistics. The district court heard expert testimony in a related case shortly before Uminn's sentencing

stating that personal use amounts of crystal methamphetamine were between a tenth of a gram to a quarter of a gram. Our circuit has noted that "a very heavy user [of methamphetamine] might use five or six grams a day." *United States v. Hampton*, 769 F. App'x 308, 309 (6th Cir. 2019) (describing a "hit" of methamphetamine as "a quarter of a gram"). Here, Uminn's self-reported daily use—a half ounce, or approximately 14 grams—is more than double the amount that "a very heavy user" might consume. *See id.* As a result, the district court could have appropriately found Uminn's statement unreliable. At bottom, the district court was best positioned to determine whether the 42 grams of methamphetamine located at the Dearborn residence constituted a distribution quantity based on the evidence at sentencing and experience in similar methamphetamine distribution cases.

The district court also relied on statements from other codefendants to draw inferences and conclude that a primary use of the Dearborn residence was drug distribution. At times there were as many as three adult occupants at the Dearborn residence: Uminn, Uminn's girlfriend, Kasey Neidlinger, and Neidlinger's mother, Kandy Kirby.[1] Kirby acknowledged that she witnessed Uminn's regular drug-distribution activity. For instance, Kirby stated that codefendant Andrew Bagley regularly spent time at the Dearborn residence and that he usually had a large quantity of crystal methamphetamine. She recalled a specific occasion in 2017, when Bagley delivered methamphetamine to Uminn at the Dearborn residence. She said that Bagley was stopped by police after he left the Dearborn residence and over an ounce of methamphetamine was seized. Additionally, Kirby stated that, in 2018, codefendant Raymond Stovall brought one pound of

---

[1] Evidence in the PSR suggests that Kirby and Neidlinger were also involved in methamphetamine distribution activity while they resided at the Dearborn residence.

methamphetamine to the Dearborn residence. Finally, Kirby reported that Uminn taught Stovall how to cut methamphetamine.

The district court inferred "that cutting or manufacturing or spreading crystal meth was done" at the Dearborn residence. Even if we completely disregard any reference to cutting methamphetamine, Kirby stated that she personally witnessed Uminn's involvement in drug-distribution activity and recalled several specific instances of distribution activity occurring at the Dearborn residence.

Second, Marcon's statement indicates that Uminn was heavily involved in drug distribution activity and recalled at least one occasion of such activity at the Dearborn residence. Marcon reported that, in 2016, Bagley purchased 10 to 12 ounces of crystal methamphetamine from Uminn each week. He also stated that Uminn was distributing one to two pounds of methamphetamine weekly during this time frame. Marcon recalled a specific occasion when Stovall and an unidentified male met Marcon and Uminn at the Dearborn residence. During this meeting, Stovall gave Marcon six ounces of methamphetamine for $2,900. As a result, the court noted that there was "evidence of significant deliveries at the house and at least in one instance a meeting of several of the principals."

Third, codefendant Robert Armstrong stated that Uminn coordinated delivery of two pounds of crystal methamphetamine between Armstrong and an unidentified white male from Benton Harbor. The methamphetamine was transported to the Dearborn residence by the white male. But, since Armstrong only had enough money to pay for a half pound of methamphetamine, the remaining 1.5 pounds were transported back to Benton Harbor by the white male.

Fourth, codefendant Stovall described Uminn as his "number one seller of crystal methamphetamine."

Ultimately, the evidence in the PSR supports the district court's application of the premises enhancement under a deferential standard of review. First, 42 grams of suspected methamphetamine was located during a search of the Dearborn residence, which could suggest that some of the methamphetamine was intended for distribution. Additionally, statements from various co-conspirators, including Kirby who resided at the Dearborn residence at times, reflect that Uminn was heavily involved in methamphetamine distribution and demonstrate that there were several specific instances of drug-distribution activity at the Dearborn residence over a span of multiple years. When viewed as a whole, the quantity of methamphetamine located at the residence paired with statements from several co-conspirators support the district court's conclusion that methamphetamine distribution was a primary use of the Dearborn residence. In sum, even if we would have decided this issue differently in the first instance, we cannot say that the district court was out of bounds by applying the premises enhancement in this case. Although some questions linger about the extent of *Buford* deference for mixed sentencing questions of law and fact, we recognize the particularly fact-bound nature of the premises enhancement and affirm the district court under a deferential standard of review.

B.

*Career-Offender Enhancement.* The district court erred in sentencing Marcon as a career offender. The government concedes that under this court's decision in *Havis*, 927 F.3d at 387, decided six days after Marcon's sentencing hearing, federal drug conspiracies do not qualify as controlled substance offenses under USSG § 4B1.2(b) for the purpose of the career-offender enhancement. As a result, Marcon's sentence must be vacated and the matter must be remanded for resentencing.

*Computation of Drug Quantity Attributable to Marcon.* Since the matter will be remanded for resentencing, we do not consider Marcon's second argument, that the court erred in relying on codefendant Stovall's statements to law enforcement, as opposed to Marcon's proffer-protected statements, when computing the drug quantity attributable to Marcon.

## III.

We accord due deference to the district court's application of the premises enhancement during Uminn's sentencing. As a result, Uminn's sentence is **AFFIRMED**.

Sentencing Marcon as a career offender was erroneous based on our post-sentencing decision in *Havis*, 927 F.3d at 387. As a result, Marcon's sentence is **VACATED** and the matter is **REMANDED** to the district court for resentencing.