NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0075n.06

Nos. 20-4092/4098

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | **FILED**<br>Feb 15, 2022<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| DEWITT CHISHOLM (20-4092); BRANDON | ) | ON APPEAL FROM THE |
| FLETCHER (20-4098), | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| *Defendants-Appellants.* | ) | DISTRICT OF OHIO |
| | ) | |
| | ) | |

Before: BOGGS, GRIFFIN, and MURPHY, Circuit Judges.

BOGGS, Circuit Judge. A massive federal investigation broke up a drug ring importing narcotics from outside of Ohio and distributing them throughout the northeastern part of the state. The thirty-count indictment placed Brandon Fletcher at the head of a conspiracy. One of his co-conspirators was allegedly Dewitt Chisholm.

Both Fletcher and Chisholm pleaded guilty to multiple drug offenses. In return, the government agreed to dismiss each defendant's charge of using a wire to facilitate the offense. Neither plea agreement was binding on the court. The Probation Office prepared Pre-Sentencing Reports that the district court adopted. Fletcher and Chisholm separately objected to elements of their PSRs: Fletcher argued that, because his PSR had flagged and corrected an error in the parties' calculation of his base offense level, the effect of the PSR had been to violate the terms of his contractually negotiated plea agreement. Chisholm objected to his designation as a career offender (and the

corresponding sentencing enhancement) based on a 2004 guilty plea, the language of which was vague because it failed to identify which of two subsections of Ohio Revised Code § 2925.03 he had pleaded guilty to. One of those subsections is a predicate offense; the other is not.

The district court rejected both defendants' objections to their PSRs. Because Fletcher's plea agreement was nonbinding, and because Chisholm's charging documents for his 2004 offense indicate that he pleaded guilty to a predicate offense, we affirm.

## BACKGROUND

After a sweeping investigation into drug trafficking in Ohio, the government indicted numerous people for a criminal conspiracy headed by Brandon Fletcher. Prosecutors claimed that Fletcher solicited and accepted drug deliveries from out of state, directing distributors below him to receive and deal cocaine, crack, heroin, fentanyl, and marijuana, and that Fletcher and a codefendant distributed cocaine personally on at least one occasion. Dewitt Chisholm, also caught up in the investigation, was alleged to have been part of the conspiracy as one of Fletcher's distributors and to have possessed cocaine with intent to distribute on at least one occasion. A federal grand jury in Ohio indicted Chisholm, Fletcher, and their fifteen codefendants on thirty drug-related counts, chief among them the drug-distribution conspiracy led by Fletcher.

### A. Brandon Fletcher

Fletcher was indicted on four counts: (1) conspiracy to distribute and possess with intent to distribute cocaine, crack, heroin, fentanyl, and marijuana, in violation of 21 U.S.C. § 846; (2) distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); (3) conspiracy to launder money, in violation of 18 U.S.C. § 1956(h); and (4) use of a communications facility to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b). Rather than proceed to trial, Fletcher entered into

a plea agreement whereby the government would dismiss the last count, and in return, Fletcher would plead guilty to the other three counts.

Fletcher and the government also agreed to certain stipulations regarding sentencing. Among them were Fletcher's admissions "that sentencing rests within the discretion of the Court"; "that the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report"; that "[t]he parties have no agreement about the sentencing range" but only a "stipulat[ion] to the computation of the advisory" range; and that "the recommendations of the parties" as to sentencing "will not be binding upon the Court." With these caveats in mind, the agreement laid out a recommended computation of Fletcher's base offense level pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

The recommended guideline computation grouped Fletcher's three remaining counts according to USSG § 3D1.2, which requires calculation of a single offense level for "[a]ll counts involving substantially the same harm." Drug offenses, including conspiracy and possession with intent to distribute, are grouped under Section 2D1.1 of the Sentencing Guidelines, which (in Fletcher's case) calculates the base offense level based on "converted drug weight" when more than one type of drug is involved. USSG § 2D1.1(a)(5); *id.* § 2D1.1 cmt. n.8(B).

The weight multiplier to calculate the converted weight of some drugs is far greater than for others under the Guidelines. As relevant here, 1 gram of cocaine equals 200 grams of converted drug weight, while 1 gram of fentanyl equals 2.5 *kilo*grams (2,500 grams) of converted drug weight. USSG § 2D1.1, cmt. n.8(D). Although other drugs were involved in the underlying indictment, the parties stipulated to calculate the offense level based on "13 kilograms of cocaine and 895.02 grams of fentanyl." The plea agreement stated that this works out to "a converted drug weight of 2,240 kilograms," for a base offense level of 30. *See* USSG § 2D1.1(c)(5) (mandating

level 30 for "[a]t least 1,000 KG but less than 3,000 KG of Converted Drug Weight"). The plea agreement gave no indication of how it had calculated the converted drug weight, only the drug amounts and the final tally.

From this base offense level of 30, the plea agreement added a two-level money-laundering enhancement, a three-level leadership enhancement, and a three-level acceptance-of-responsibility reduction, for a total stipulated offense level of 32. Finally, Fletcher reserved his right to appeal punishments exceeding "the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement."

As contemplated in the plea agreement, the Probation Office prepared a Pre-Sentence Report (PSR). According to the PSR—and as all parties now agree—Fletcher's plea agreement had incorrectly calculated the converted drug weight. The plea agreement had stipulated to 13 kilograms of cocaine and 895.02 grams of fentanyl, then asserted "a converted drug weight of 2,240 kilograms." The Probation Office, however, correctly calculated a converted drug weight using the drug conversion tables in USSG § 2D1.1, cmt. n.8(D). Based on the same stipulated raw quantities, the correct calculation is:

$$
\begin{array}{lll}
13 \text{ kg cocaine} * (0.2 \text{ kg CDW}[1] / 0.001 \text{ kg cocaine}) & = & 2{,}600 \text{ kg CDW} \\
0.89502 \text{ kg fentanyl} * (2.5 \text{ kg CDW} / 0.001 \text{ kg fentanyl}) & = & 2{,}237.55 \text{ kg CDW} \\
\hline
& \text{Total} = & 4{,}837.55 \text{ kg CDW}
\end{array}
$$

*See* USSG § 2D1.1, cmt. n.8(D) (stating that 1 gram of cocaine equals 200 grams of converted drug weight and 1 gram of fentanyl equals 2.5 kilograms of converted drug weight).

---

[1] CDW stands for "converted drug weight."

Applying the correctly calculated converted drug weight of 4,837.55 kilograms, Fletcher's base offense level increased from 30 to 32. *Compare* USSG § 2D1.1(c)(5) (imposing a base offense level of 30 for "[a]t least 1,000 KG but less than 3,000 KG of Converted Drug Weight"), *with id.* § 2D1.1(c)(4) (imposing a base offense level of 32 for "[a]t least 3,000 KG but less than 10,000 KG of Converted Drug Weight"). Based on the enhancements and reductions described in the plea agreement (+2, +3, –3), the Probation Office calculated a total offense level of 34. Combined with a criminal history category of I, the PSR recommended a sentencing range of 151 to 188 months of imprisonment. The district court adopted the PSR's recommendations, rather than the plea agreement's,[2] over Fletcher's objections. At sentencing, the court granted a downward variance from the Guidelines range: Fletcher was sentenced to 132 months of imprisonment. Fletcher timely appealed.

## B. Dewitt Chisholm

Chisholm was indicted on three counts: (1) conspiracy to distribute and possess with intent to distribute cocaine, crack, heroin, fentanyl, and marijuana, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) use of a communications facility to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b). Similarly to Fletcher, Chisholm entered a plea agreement. And similarly to Fletcher, the government agreed to dismiss Chisholm's § 843(b) charge (the final count) if he would plead guilty to the other two counts. Chisholm's plea agreement calculated a base offense level of 14, noting that

---

[2] Assuming the court would have calculated a criminal history category of I, adopting the plea agreement's total offense level of 32 would likely have led to a Guidelines range of 121 to 151 months of imprisonment.

if he were found to be a career offender, his offense level would be raised to 34. Chisholm reserved the right to appeal any future designation as a career offender.

Again as contemplated in the plea agreement, the Probation Office prepared a PSR. After agreeing with the parties' recommended base offense level of 14, the PSR analyzed whether Chisholm was a career offender subject to (in this case) an enhanced offense level of 34. Section 4B1.1(a) of the Guidelines defines a career offender as an adult convicted of "a felony that is either a crime of violence or a controlled substance offense" who has at least two prior convictions also meeting that definition. USSG § 4B1.1(a). The Guidelines define a controlled-substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession . . . with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b).

The crimes to which Chisholm has pleaded guilty in this case—21 U.S.C. §§ 841(a)(1) and 846—are indeed controlled-substance offenses. *United States v. Booker*, 994 F.3d 591, 596 (6th Cir. 2021) ("It would be remarkable if [defendant] were right that § 841(a)(1) did not describe a 'controlled substance offense.'"); *Gamble v. United States*, No. 16-2527, 2020 WL 475832, at *11 (W.D. Tenn. Jan. 29, 2020) ("[T]he Sixth Circuit ha[s] repeatedly recognized that a conspiracy conviction under § 846 constitutes a controlled substance offense." (citing *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995))). As to the predicate offenses, the PSR cited Chisholm's "two prior felony convictions of a controlled substance offense . . . in Cuyahoga County Court of Common Pleas" and thereby recommended designating him a career offender.

The PSR described Chisholm's career-offender predicates as (1) a 2004 conviction for "Trafficking in Drugs" and (2) a 2013 conviction for a "Trafficking Offense." Upon closer

inspection, the 2004 conviction was a guilty plea "to trafficking in drugs / 2925.03," referring to Ohio Revised Code § 2925.03.

Chisholm objected to the designation of the 2004 conviction as a predicate offense,[3] pointing out that neither "[t]he indictment nor journal entry designates" the subsection of § 2925.03 under which he was actually convicted. While subsection (A)(1) of that statute prohibits the sale (or offer for sale) of a controlled substance, subsection (A)(2) provides that "[n]o person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance . . . intended for sale or resale." Ohio Rev. Code § 2925.03(A)(1)–(2). Chisholm argued that "the mere attempt to sell cocaine" under subsection (A)(1)—as opposed to shipping or distributing it for resale under subsection (A)(2)—could not constitute a controlled-substance offense. *Cf.* USSG § 4B1.2(b) (including "import, export," and "distribution," but not "offer to sell," in the definition of a controlled-substance offense). This ambiguity, Chisholm asserted, required an assumption that the 2004 conviction was not a predicate offense and thus precluded his designation as a career offender.

The district court accepted the PSR's recommendations over Chisholm's objections. The court found him to be a career offender based on the 2004 and 2013 predicate convictions and calculated a base offense level of 34 and a criminal history category of VI. Chisholm's acceptance of responsibility led to a three-level reduction, a final offense level of 31, and a recommended Guidelines range of 188 to 235 months of imprisonment. However, the court granted a downward variance due to Chisholm's "limited role in the conspiracy" and given its prior sentencing of "[co]defendants . . . whose role is much greater [but] were not career offenders." The court decided

---

[3] Chisholm initially also objected to the designation of his 2013 conviction as a predicate offense, but has not preserved that argument on appeal.

to consider Chisholm's final offense level as only 29, resulting in a Guidelines range of 151 to 188 months of imprisonment. The court sentenced Chisholm to 151 months of imprisonment.

Chisholm, like Fletcher, timely appealed.

\* \* \*

Fletcher takes issue with the district court's adoption of the base offense level calculated in the PSR rather than that in his plea agreement; Chisholm disputes his designation by the district court as a career offender. Their appeals are consolidated here, and for the reasons articulated below, we affirm.

**ANALYSIS**

**A. Brandon Fletcher**

On appeal, Fletcher argues that the PSR's recalculation of his converted drug weight, and the district court's adoption of that calculation rather than the number in Fletcher's plea agreement, violated the terms of the agreement. He is incorrect.

Because Fletcher properly raised and has preserved his objections to his sentencing, we review the district court's actions for "abuse of discretion, with underlying factual findings reviewed for clear error and legal conclusions reviewed de novo." *United States v. Lucas*, Nos. 19-6390/6392/6393/6394, 2021 WL 4099241, at \*10 (6th Cir. Sept. 9, 2021) (citing *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard . . . , or makes a clear error of judgment." *Federal Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (citation omitted).

Fletcher objects to what he calls the district court's "rewrit[ing] the terms of the plea agreement by overlooking the clear agreement between the parties concerning the . . . base offense level

of 30." The issue is whether the district court abused its discretion by adopting a base offense level other than the one Fletcher and the government had agreed to.

Federal Rule of Criminal Procedure 11(c) governs the negotiation of plea agreements. Pursuant to Rule 11(c)(1), plea agreements may contain certain limitations or recommendations. Two subsections, (c)(1)(B) and (c)(1)(C), address the range of a defendant's sentence and are mutually exclusive. The Rule reads in relevant part:

> [T]he plea agreement may specify that an attorney for the government will:
>
>> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate . . . (such a recommendation or request *does not bind the court*); or
>>
>> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case . . . (such a recommendation or request *binds the court* once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(B)–(C) (emphases added). Fletcher's plea agreement was negotiated according to Rule 11(c)(1)(B), not (c)(1)(C). Put another way, any sentencing "recommendation[s] or request[s]" in the plea agreement did "not bind the court" in coming to a final judgment.

To the extent that Fletcher argues that the sentencing recommendations of his plea agreement were binding on the district court, therefore, he is mistaken. His assertion in his opening brief that "[t]he plea agreement in this case is entered under [Rule] 11(c)(1)(C)" is flatly contradicted by the record. The cases he cites are inapposite for the simple reason that they concern (c)(1)(C) agreements or Rule 11's predecessor. Because Fletcher incorrectly believes his plea agreement was binding on the district court, the only question is whether the district court abused its discretion by adopting the PSR's math rather than the plea agreement's.

This court confronted a similar issue in *United States v. Carter*, 814 F. App'x 1000 (6th Cir. 2020). In *Carter*, a plea agreement had set the defendant's base offense level at 24, with the stipulation that "any recommendations were not binding." *Id.* at 1003. The PSR then stated that

the plea agreement "had failed to take into consideration" certain sections of the Guidelines and calculated a corrected recommended offense level of 30. *Ibid.* At the sentencing hearing, the government argued that the plea agreement's calculation had been a simple mistake, and the court was entitled to rely on the PSR's corrections. *Ibid.* The defendant countered by positing that the sections of the Guidelines omitted from the plea agreement had been left out as the result of negotiation between the parties, and because of that, "the court ought to give meaning to the figure at which the plea bargain had arrived." *Id.* at 1004. Ultimately, the district court disagreed, adopting the PSR's higher offense level, in part because the court "didn't believe [the base offense level] was a negotiated number." *Ibid.* This court then affirmed in an unpublished opinion on the ground that the government had not violated the plea agreement merely by acknowledging its mistakes. *Id.* at 1008–09.

In *Carter*, there was at least a debate as to whether the parties had made a mistake in calculating the converted drug weight in the plea agreement or whether, in the alternative, the lower base offense level reflected a negotiated settlement. 814 F. App'x at 1003–04. This case, on the other hand, is unambiguous: Fletcher admits that the plea agreement's converted-drug-weight calculation was "mistaken[ ]" and characterizes it as the result of "mutual mistake." His assertion is not that he and the government purposely calculated a lower drug weight, but rather that the district court should have used its discretion to adopt the plea agreement's concededly erroneous calculation of 2,240 kilograms in place of the PSR's correct weight of 4,837.55 kilograms. However, as discussed above, the plea agreement was nonbinding; thus, the district court could hardly have abused its discretion by departing from the agreement's recommendations in favor of the PSR's corrections. *E.g.*, *E.M.A. Nationwide*, 767 F.3d at 627 ("An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the

correct legal standard . . . , or makes a clear error of judgment." (citation omitted)). With respect to Fletcher's claims, we affirm.

## B. Dewitt Chisholm

Chisholm argues that his 2004 conviction under Ohio Revised Code § 2925.03 should not have qualified as a career-offender predicate. Because the charging documents adequately describe the offense for which he was convicted, the 2004 conviction does so qualify.

"We review de novo whether a prior conviction qualifies for career-offender status." *United States v. Hill*, 982 F.3d 441, 443 (6th Cir. 2020) (citing *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam)).

The parties agree, in line with this court's precedents, that § 2925.03 is composed of two punitive subsections with diverging implications: subsection (A)(1) is not a career-offender predicate because it does not meet the Guidelines' definition of a controlled-substance offense, while subsection (A)(2) is such a predicate because it does. *See United States v. Smith*, 960 F.3d 883, 889 (6th Cir. 2020). The question is therefore whether Chisholm was convicted in 2004 for an (A)(2) offense. The available record documents[4] confirm that he was.

---

[4] This court may not engage in a searching factual analysis of a defendant's past convictions. When a defendant has pleaded guilty, "a later court . . . is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). In this case, that collection of papers, known as *Shepard* documents, consists of the 2004 grand jury indictment and a journal entry from the Cuyahoga County Court of Common Pleas indicating that Chisholm pleaded guilty to three offenses stemming from the indictment. Chisholm introduced the documents before the district court as exhibits to his written objections to the PSR. Neither party argues that the *Shepard* documents are improperly before this court.

The grand jury indictment that led to Chisholm's 2004 conviction charged Chisholm and two others with fifteen counts of various drug offenses. As indicated in a later journal entry in the Cuyahoga County Court of Common Pleas, Chisholm pleaded guilty to Counts 1, 7, and 13 of that indictment.

Counts 1 and 7 charged mere possession or attempted possession of small amounts of crack cocaine, and would therefore not qualify as controlled-substance offenses. *Cf.* USSG § 4B1.2(b). Count 13 identified the charged offense as "R.C. [Revised Code] 2925.031," which is not a section of the Code and does not exist. But the count otherwise largely tracked word-for-word the language of Ohio Revised Code § 2925.03(A)(2):

> Defendant(s) unlawfully did <u>knowingly prepare for shipment, ship, transport, deliver, prepare for distribution or distribute a controlled substance</u>, to-wit: Crack Cocaine . . . <u>knowing or having reasonable cause to believe</u> such drug was <u>intended for sale or resale by the offender or another</u>.

The underlined language matches subsection (A)(2). Similarly, Counts 2, 5, and 8 each charged Chisholm and a codefendant with near-identical offenses that likewise tracked the language of subsection (A)(2); however, in those counts, the cited statute was "R.C. 2925.03" rather than "R.C. 2925.031." Chisholm did not plead guilty to any of those counts, only to Count 13. Nor did Chisholm plead guilty to Counts 3, 6, or 9, each of which charged Chisholm and a codefendant with violating "R.C. 2925.03" and contained the following language tracking subsection (A)(1):

> Defendant(s) unlawfully and <u>knowingly</u> did <u>sell or offer to sell a controlled substance</u>, to-wit: Crack Cocaine.

By all indications, then, in 2004 Chisholm was indicted (in part) for violations of § 2925.03, some of which matched the language in subsection (A)(1) and some of which matched the language in subsection (A)(2). None of the counts of the indictment charging Chisholm with violating § 2925.03 cited to that statute's subsections; nevertheless, it is clear from the language in

the indictment that each count used the language of either (A)(1) or (A)(2) in stating the charged offense.  In the end, he pleaded guilty to one of the counts that matched subsection (A)(2)—a controlled-substance offense—and so his 2004 conviction was properly characterized as a predicate offense.  Therefore, the district court correctly designated Chisholm as a career offender, and we affirm the district court's judgment with respect to him as well.

## CONCLUSION

For the reasons above, we **AFFIRM** the judgment of the district court as to both Fletcher and Chisholm.