NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0342n.06

No. 22-1812

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 25, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHRISTOPHER FLOWERS, SR., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: MOORE, GIBBONS, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Christopher Flowers robbed a bank in Benton Township, Michigan. During the robbery he put his hand behind his shirt and pointed his finger at the teller, pretending it was a gun underneath the fabric, while demanding money. Despite being unarmed, Flowers was assessed a three-level enhancement for brandishing or possessing a "dangerous weapon." *See* USSG § 2B3.1(b)(2)(E) cmt. n.2. Over Flowers' objection, the district court applied the three-level enhancement and sentenced him to 88-months' imprisonment. Flowers challenges his sentence on the grounds that the commentary improperly expands the scope of "dangerous weapon" in the Guidelines. But our precedent has already addressed this question, finding that it does not. We therefore AFFIRM.

I.

Flowers has a history of actual and attempted bank robberies. He entered the Benton Township bank on February 23, 2022, to attempt another robbery seven days after an unsuccessful

robbery at a different bank. At the time, he was on supervised release for a federal bank robbery conviction in 2019.

When Flowers committed the bank robbery on February 23, he was unarmed. But he acted like he had a weapon. He handed the teller a note, informing her that he would kill everyone inside if she did not quickly surrender money to him. As he demanded the money and threatened murder, Flowers pointed a finger at the teller from underneath his shirt. He then took approximately $1,691 in U.S. currency, grabbed the note, and fled the scene.

Officers provided images of the robbery suspect and his get-away car to local media, which led to a tip that the suspect was Flowers. After gathering more evidence and additional tips, law enforcement arrested Flowers in South Bend, Indiana on charges related to absconding from supervised release. Flowers eventually admitted to committing the February 23 robbery, and he did not deny the February 16 robbery attempt.

Flowers was charged in a two-count indictment with attempted bank robbery and bank robbery. A plea agreement followed. He agreed to plead guilty to the February 23 bank robbery, while the government dismissed the attempted bank robbery charge. During the plea colloquy, when asked about the object he pointed at the teller, Flowers informed the magistrate judge that there was no object—only the illusion of an object created by pointing his finger under his shirt.

The presentence report recommended a three-level enhancement for brandishing or possessing a "dangerous weapon" pursuant to USSG § 2B3.1(b)(2)(E). The recommendation was based in part on Sentencing Guidelines commentary, which states that the "dangerous weapon" enhancement is proper if the defendant "used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)."

USSG § 2B.3.1 cmt. n.2. With the enhancement, Flowers' total offense level was 22, with a category VI criminal history. That resulted in a sentencing range of 84-to-105 months.

While acknowledging that our court upheld application of the three-level dangerous-weapon enhancement under similar factual circumstances in *United States v. Tate*, 999 F.3d 374 (6th Cir. 2021), Flowers argued that his sentence was unreasonable because it relied on unreasonable agency interpretation of the Sentencing Guidelines. The district court overruled Flowers' objection, noting that it was bound by *Tate*. Based on the recommended guidelines range, it sentenced Flowers to 88-months' imprisonment. Flowers timely appealed.

II.

We review the district court's sentencing for procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Flowers challenges his sentence on the grounds that the commentary to the Guidelines improperly expands the scope of offenses that trigger the three-level enhancement for brandishing or possessing a "dangerous weapon." *See* USSG § 2B3.1(b)(2)(E) cmt. n.2. We construe his challenge as a procedural one. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (challenges to calculation of the guidelines range are procedural in nature). We review de novo the district court's interpretation of the Guidelines. *See United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021).

III.

The commentary that Flowers challenges pertains to USSG § 2B3.1(b)(2)(E), which advises a three-level enhancement when a robbery includes "a dangerous weapon [being] brandished or possessed." *Id.* The commentary states that an object should be considered a dangerous weapon if "the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (e.g., a defendant

wrapped a hand in a towel during a bank robbery to create the appearance of a gun).” *Id.* at cmt. n.2. Because Flowers pointed his finger from behind his shirt, pretending it was a gun, the district court accordingly applied the three-level enhancement to Flower’s offense level. Flowers objected to the enhancement and now challenges its propriety on appeal, arguing that the Guideline’s commentary improperly expands the scope of “dangerous weapon” in the Guidelines to include a hand that pretends to be a gun.

As noted, our court held a concealed hand posing as a gun qualifies for the three-level enhancement for brandishing or possessing a “dangerous weapon.” *See Tate*, 999 F.3d at 378–81. Flowers concedes this, acknowledging that *Tate* controls this case. In *Tate*, the defendant received the three-level enhancement “for concealing his hand in a bag to suggest the existence of a dangerous weapon while robbing a bank.” *Id.* at 376. Tate argued that the district court could apply the enhancement only if it accepted the meaning of the term “dangerous weapon” as referenced in the Guidelines commentary. *Id.* at 377. Tate maintained that, contrary to the commentary, a “‘dangerous weapon’ . . . is not one’s hand when covered in a bag. Instead, it must be an object that, when used in its ordinary course, is ‘able or likely to cause injury [when] used against another.’” *Id.* at 378. In *Tate*, we rejected that argument, finding that *McLaughlin v. United States*, 476 U.S. 16, 17–18 (1986), controlled. *Tate*, 999 F.3d at 378–79. In *McLaughlin*, the Supreme Court unanimously held that an unloaded gun was a “dangerous weapon” as used in 18 U.S.C. § 2113(d) for several independent reasons, one of which included that “the display of a gun instills fear in the average citizen,” which raises the risk of a violent response. *McLaughlin*, 476 U.S. at 17–18; *Tate*, 999 F.3d at 379. Based on *McLaughlin*, the *Tate* court concluded that “the unambiguous text of the Guidelines enhancement for dangerous weapons applies whether the robber is, or merely pretends to be, armed.” *Tate*, 999 F.3d at 381.

*Tate* requires us to affirm the district court, but Flowers maintains that it was wrongly decided. Flowers argues that *Tate* conflicts with Sixth Circuit and Supreme Court precedent. *See United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam); *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). In *Havis*, we determined that the Sentencing Commission, rather than interpreting a term within the Sentencing Guidelines, improperly expanded the Guidelines to include crimes that were not contemplated. *Havis*, 927 F.3d at 386 (noting that the Commission's attempt to make attempt crimes part of § 4B1.2(b) was improper because "no term in § 4B1.2(b) would bear that construction."). And in *Kisor*, the Supreme Court clarified the scope of *Auer* deference to an agency's interpretation of its own regulations. *See Kisor*, 139 S. Ct. at 2414–18; *Riccardi*, 989 F.3d at 484–85. Under *Kisor*, a court defers to an agency's interpretation of a regulation if the court "find[s] that the regulation is 'genuinely ambiguous, even after [the] court has resorted to all the standard tools of interpretation' to eliminate that ambiguity." *Riccardi*, 989 F.3d at 485 (quoting *Kisor*, 139 S. Ct. at 2414). Flowers argues that *Kisor* requires a court to forego "reflexive" deference and scrutinize agency interpretations more closely. *See id.* at 485. If we were to do so, Flowers argues that we would determine that the three-level enhancement as applied to him was improper because the commentary improperly expands the scope of "dangerous weapon" to include someone using his hand as a pretend gun. *See* USSG §§ 1B1.1 cmt. n.1(E), 2B3.1 cmt. n.2; *see Tate*, 999 F.3d at 388 (Murphy, J., concurring) (concluding that the commentary constitutes "an improper enlargement of the guideline's scope.")

Flowers' argument mirrors Tate's, and thus cannot be adopted absent an overruling of *Tate*. *See* 999 F.3d at 382; *United States v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000) ("It is firmly established that one panel of this court cannot overturn a decision of another panel; only the court sitting en banc can overturn such a decision."); *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th

380, 390 (6th Cir. 2021) ("In the Sixth Circuit, a three-judge panel may not overturn a prior decision unless a Supreme Court decision 'mandates modification' of our precedent.") (citation omitted). To be fair, Flowers acknowledges this fact and indicates that he will seek en banc hearing to overturn *Tate*. But, absent such review or a Supreme Court ruling that overturns our precedent, we are bound by that precedent. *Lanier*, 201 F.3d at 846.

## IV.

Flowers' sentence is procedurally reasonable. We therefore AFFIRM.