NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0026n.06

No. 22-5096

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="10"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>KENNETH MOBLEY,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Jan 12, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Kenneth Mobley appeals his sentence totaling 76 months' imprisonment for wire fraud and aggravated identity theft based on his fraudulent procurement of luxury cars.  The district court used the total sales price, including various service and finance charges, in the total loss amount to calculate his Guidelines range.  Mobley appeals, arguing that his sentence is unreasonable, and that the restitution order is not supported by facts in the record.  Because the district court did not clearly err in calculating the loss amount and did not plainly err in ordering restitution, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

Over the course of six months in 2020, Mobley defrauded car dealerships to obtain luxury cars.  Using stolen identifying information purchased on the "dark web," Mobley created false identifications and presented them to car dealerships to purchase cars on credit.  All told, Mobley

obtained five cars, the value of which increased with each fraudulent purchase. The first fraudulent purchase occurred in Lexington, Kentucky, while the other four occurred in Florida.

A grand jury returned a three-count indictment charging Mobley in the Eastern District of Kentucky with felon in possession of a firearm, wire fraud, and aggravated identity theft. Mobley pled guilty to wire fraud and aggravated identity theft, and the Government agreed it would move to dismiss the firearm count at sentencing. In the plea agreement, Mobley agreed to the imposition of restitution, including losses incurred by victims in a pending state court case in Florida. At his rearraignment hearing, Mobley confirmed that he read and understood the plea agreement, including the provision regarding restitution.

The parties disputed the loss amount attributable to the wire fraud count. The Presentence Investigation Report (PSR) calculated a total offense level of 16, including a 12-level enhancement pursuant to USSG § 2B1.1.(b)(1) based on a loss amount of $253,294.87. That amount represents the total of the amount financed to fraudulently obtain the five cars.

Mobley objected to the loss amount specified in the PSR. He argued that charges for "processing fees and [gap] insurance coverage" and "substantial finance charges"—totaling approximately $45,000—should not be included in the loss amount according to the commentary to § 2B1.1. Excluding any of those charges, Mobley contends that his loss amount would fall below the threshold of $250,000 for a 12-level enhancement, entitling him to a two-level reduction in his total offense level and a lower Guidelines range. The Government disagreed, arguing that the amount considered in the PSR accurately reflected the intended loss for the crime because the miscellaneous expenses were "part and parcel of the fraud," not improper "after-the-fact" expenses.

At sentencing, the district court adopted the Government's position and overruled Mobley's objection. It reasoned that the "object [of the scheme] was to get the cars, and in order to get the cars, [Mobley] had to finance [them]" and the expenses were not accrued after the purchase. With the 12-level enhancement, Mobley's Guidelines range on the wire fraud count was 46 to 57 months with an additional 24-month consecutive term on the aggravated identity theft count. Ultimately, the court imposed a Guidelines sentence of 52 months on the wire fraud count to be followed by the 24-month consecutive term on the aggravated identity theft count for a total term of 76 months' imprisonment. The judgment also provided for restitution in the amount of $55,178.87 payable to two car dealerships, an apartment complex, an insurance company, a rental company, and a home furnishing company.

## II.  ANALYSIS

On appeal, Mobley raises two issues regarding his sentence: (1) it was unreasonable because the loss amount was overstated, which resulted in a higher Guidelines range, and (2) the restitution order was erroneous. "We review a district court's calculation of the 'amount of loss' for clear error, but consider the methodology behind it *de novo*." *United States v. White*, 846 F.3d 170, 179 (6th Cir. 2017) (quoting *United States v. Meda*, 812 F.3d 502, 519 (6th Cir. 2015)). To demonstrate clear error, the defendant "must show the calculation 'was not only inexact but outside the universe of acceptable computations.'" *Id.* (quoting *United States v. Healy*, 553 F. App'x 560, 564 (6th Cir. 2014)). Arguments not preserved in the district court at sentencing are reviewed

under the plain error standard. [1] *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).

## A.    The District Court's Loss Amount Finding

Under the Guidelines commentary, the loss caused by fraud is the "greater of actual loss or intended loss," with intended loss defined as "the pecuniary harm that the defendant purposely sought to inflict." USSG § 2B1.1, comment. (n.3(A)(i)-(ii)).[2] But "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, [and] other similar costs," should be excluded from the loss calculation. *Id.*, comment. (n.3(D)(i)). Similarly, the loss amount should be reduced by the fair market value of any property returned to the victim "before the offense was detected" and amounts recovered by the victim "in [cases] involving collateral pledged or otherwise provided by the defendant." *Id.,* comment. (n.3(E)(i)-(ii)).

At sentencing, the Government bears the burden of proving the loss amount by a preponderance of evidence, and "the district court 'need only make a reasonable estimate' of the amount." *United States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011) (quoting USSG § 2B1.1, comment. (n.3(C))). In this case, the court found that Mobley intended to inflict over $250,000 of pecuniary harm to the victims as supported by the Government's exhibits detailing the total amount Mobley financed to obtain the five cars, which exceeded their cash price. As he did at sentencing, Mobley contends that the loss amount was overstated by impermissibly including extraneous charges that he argues should have been excluded according to the Guidelines commentary.

---

[1] The plain error standard requires a challenger to show error that was obvious or clear, affected substantial rights, and affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Vonner*, 516 U.S. 382, 386 (6th Cir. 2008) (en banc).

[2] Mobley does not challenge the validity of the Guidelines commentary defining loss. We have previously held that the commentary defining loss should be afforded deference under *Stinson v. United States*, 508 U.S. 36, (1993), because it merely interprets the undefined phrase "loss" in the Guidelines rather than adding to it. *See United States v. Murphy*, 815 F. App'x 918, 924 (6th Cir. 2020) (distinguishing *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc)).

Additionally, for the first time on appeal, he argues that the loss amount should have been reduced by "amounts paid by Mobley, collateral recovery and other cost recovery" and should only reflect the value of one vehicle because the other four were not procured by wire fraud. These unpreserved arguments will be reviewed under the plain error standard. *Vonner*, 516 F.3d at 385.

Intended loss has "long been defined as 'the loss the defendant subjectively intended to inflict on the victim, e.g., the amount the defendant intended not to repay.'" *United States v. Montgomery*, 592 F. App'x 411, 418 (6th Cir. 2014) (quoting *United States v. Moored*, 38 F.3d 1419, 1427 (6th Cir. 1994)). In this context, it is not clear error to find that the total amount necessary to finance a luxury car is the harm Mobley intended to inflict. Mobley's entire scheme was predicated on using stolen personal identifying information to obtain cars *using those victims' credit*. To be sure, the Guidelines commentary contemplates excluding "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, [and] other similar costs" from the loss amount. USSG 2B1.1, comment. (n.3(D)(i)). But Mobley does not explain how things like insurance coverage, processing fees, and predelivery service fees fall under that commentary as "other similar costs." Further, courts have found that the purpose of the exclusion-from-loss commentary is to ensure that "the offense level for a financial crime is not increased if the prosecution is delayed, even though the delay increases the cost of the crime." *United States v. Peel*, 595 F.3d 763, 772 (7th Cir. 2010). The finance charges necessary for Mobley to fraudulently obtain the cars appear to be fixed charges included at the time of sale, not amounts that would increase over time.[3] *Cf. United States v. Pouparina*, 577 F. App'x 939, 941 (11th Cir. 2014) (holding closing costs should not be excluded because they were "a fixed amount that was incurred only when the loan was originally taken out"); *United States v. Longwell*, 410 F.

---

[3] Indeed, Mobley admits in reply that the "strong majority of car purchases . . . are financed."

App'x 684, 691 (4th Cir. 2011) (holding that "interest or penalties" defendant sought to discharge through bankruptcy should not be excluded from loss amount). The district court did not clearly err in calculating the loss amount as the total amount financed—an amount that accurately reflects Mobley's culpability.

Mobley's other, unpreserved arguments can be addressed quickly. His argument relying on cars that were recovered is not relevant because the cars were not recovered "before the offense was detected," and this is not "a case involving collateral pledged or otherwise provided by [Mobley]." *See* USSG 2B1.1, comment. (n.3(E)(i)-(ii)). His argument that only one car was procured by wire fraud is belied by the record, and, even if it were not, it does not change the result. The wire fraud statute, 18 U.S.C. § 1343, requires a fraudulent scheme to cause a wire communication, but that communication "'need not be an essential element of the scheme,'" only "'incident to an essential part of the scheme,' or 'a step in [the] plot.'" *United States v. Shanshan Du*, 570 F. App'x 490, 505 (6th Cir. 2014) (quoting *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989)).

The district court did not clearly or plainly err in calculating the loss amount attributable to Mobley's fraudulent scheme to procure luxury vehicles.

### B. The District Court's Restitution Order

For the first time on appeal, Mobley takes issue with the district court's restitution order payable to two car dealerships, an apartment complex, an insurance company, a rental company, and a home furnishing company. He challenges the inclusion of restitution to the insurance company in the amount of $31,946.01, the apartment complex in the amount of $7,508.77, the rental company in the amount of $4720.10, and the home furnishing company in the amount of

$6,735.99. We review this unpreserved argument as to restitution under the plain error standard. *Vonner*, 516 F.3d at 385.

The district court may order that a defendant make restitution to any victim of a fraud crime or, "if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663(a)(1)(A). The statute defines "victim" as a "person directly and proximately harmed" because of the offense. *Id.* § 3663(a)(2). The district court may "also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *Id.* § 3663(a)(3). The insurance company is arguably a victim as defined by the statute, as it stood in the place of one of the harmed car dealerships and was directly and proximately harmed by Mobley's offense. As for the apartment complex, rental company, and home furnishing company, Mobley explicitly agreed to pay restitution at the ordered amount in his plea agreement and confirmed that he understood the provision at his rearraignment hearing. Including each of these companies in the restitution order was permitted under the statute, and the district court did not plainly err in including them in its restitution order. *See United States v. Winans*, 748 F.3d 268, 272-73 (6th Cir. 2014) (affirming restitution order that included "persons other than the victim of the [wire fraud] offense" pursuant to plea agreement).

### III.   CONCLUSION

Because we find that the district court did not clearly err in calculating the loss amount and did not plainly err in ordering restitution, we **AFFIRM** the district court's judgment.